William E. **BROCK**, Secretary of
Labor, United States Department
of Labor, et al., Plaintiffs,

v.

**INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA**, et al., De-
fendants.

Civ. A. Nos. 86–3859, 86–4827,
86–5007 and 86–4164.

United States District Court,
E.D. Michigan, S.D.

March 30, 1988.

Peter A. Caplan, Asst. U.S. Atty., Barbara Harvey, Detroit, Mich., Joseph Yablonski, Washington, D.C., for plaintiffs.

M. Jay Whitman, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

SUHRHEINRICH, District Judge.

These consolidated cases, which are currently before the Court on cross-motions for summary judgment, involve difficult questions of federal labor law and civil procedure. The four cases arise out of events surrounding an International Union, United Automobile Workers (hereinafter UAW) election. On June 4, 1986, local UAW (hereinafter local or UAW local) delegates elected from the ranks of the locals met to elect the UAW Region 5 Regional Director. Pursuant to the UAW Constitution, Region 5 is composed of Missouri, Arkansas, Louisiana, Kansas, Oklahoma, Texas, Colorado, and New Mexico. UAW Constitution, Article 10, section 21.[1] This election is of great significance in the UAW since the Region 5 Regional Director not only runs Region 5, but also is part of the UAW's International Executive Board (hereinafter IEB). The IEB is the governing body of the UAW, and is currently composed of the UAW president, the secretary-treasurer, 5 vice presidents, and 16 regional directors elected from the UAW's 10 regions. 1986 UAW Constitution, Article 10, section 1.

Two candidates were running for the office of Region 5 Regional Director in the 1986 election. These individuals were Ken Worley, the incumbent Regional Director,

---

1. References to the UAW Constitution, unless otherwise indicated, refer to the 1983 Constitution which was in effect at the time of the 1986 elections.

and Jerry Tucker, a former Worley assistant who had been a UAW International Representative for 16 years. Tucker was the Assistant Regional Director for Region 5, having been appointed to this position by Ken Worley. Tucker held his job, the highest appointed position in Region 5, until a month before the election when he was fired. Notably, while Worley was supported by the Administration Caucus, Tucker was supported by the New Directions Caucus.[2] All of the incumbent UAW directors and elected officers were members of the Administration Caucus.

Tucker declared his candidacy for the regional director position on May 8, 1986. By so declaring his candidacy, Tucker acted in contravention to a policy (hereinafter 90–day rule) requiring appointed UAW staff members who oppose an elected incumbent to declare their candidacy at least 90 days before the election and to take an unpaid leave of absence from their staff position for that length of time.[3] Although Tucker asked for a leave of absence after he declared, the leave was denied him. He was instead discharged from his staff position at UAW President Owen Bieber's behest on May 12, 1986. The stated reason for Tucker's termination was his violation of the 90–day rule.

Due to his discharge, Tucker was denied access to the floor of the convention. Thus, he was unable to campaign for office at the convention. Additionally, the fact of his discharge was common knowledge among the delegates. However, Tucker was not prohibited from running for union office.

The Region 5 Regional Director election took place at the 1986 UAW convention in Anaheim, California. Many of the Region 5 delegates were dressed in grey jackets which had a map of the region and the words "Ken Worley, Director" emblazoned on the back. Jerry Tucker's supporters wore blue jackets to distinguish themselves from the other Region 5 delegates. Since these jackets are at issue in one of the present cases, a historical note is appropriate. The wearing of jackets has become common at UAW conventions during the past 20 years. These jackets are generally in different colors for the different UAW regions and are used to supply regional identity to the delegates. The regional director's name apparently does not appear on all such jackets, but does appear on some.

The vote for Region 5 Regional Director was taken in roll call fashion, with the delegates from each local being polled separately. After the votes were tallied, UAW officials declared Ken Worley the winner by a total of 324.577 votes to Tucker's 324.416 votes. On the basis of this count, Worley won by 0.161 of one vote.[4]

Following the election, Jerry Tucker protested its results in a letter to Owen Bieber dated June 5, 1986. In that letter, Tucker alleged that he did not get a fair vote count in the election since some delegates were illegally seated. Tucker specifically alleged that Locals 1482, 2175, and 967 had improperly seated delegates. He contended that there was no election in Locals 1482 and 2175, and that improper delegate credentials were filed by Local 967. On June 6, 1986, the convention delegates voted to reconvene the convention's credentials committee so that Tucker's protest could be examined. In addition to the delegates questioned in his written protest, Tucker orally raised questions concerning the validity of the delegate elections in Locals 286

2. The caucuses are political parties within the UAW.

3. The 90–day rule is of disputed origin, and both the Secretary of Labor and Tucker argue that it is not a binding rule. Plaintiff Tucker contends that the 90–day rule was a construct of the Administration Caucus which was never properly enacted by the IEB. Absent such enactment, it is argued that the rule is invalid.

4. Such a fractional vote is possible since the delegates do not have one vote each, but, rather, a variable number of votes determined by dividing the number of votes assigned to the local based on membership by the number of delegates sent to the convention by the local. The exact margin of Worley's victory is unclear. In several documents filed with the court, it is listed as 0.151 of one vote, while in others, it is stated to be 0.161 of one vote. Whether the margin was 0.151 or 0.161 of one vote is immaterial to the motions at hand.

and 514 to the credentials committee. He could produce no information concerning those locals. Upon consideration of the protests and the alleged local delegate election violations, the credentials committee concluded that no violations had occurred.[5] The election results were accordingly affirmed, and Owen Bieber informed Tucker from the convention platform that he had exhausted his union remedies. Tucker, thereafter filed a complaint by letter dated June 13, 1986 with the Secretary of Labor.

After investigating Tucker's protest, the Secretary filed the first in this series of lawsuits on September 12, 1986. That lawsuit, Civil Action No. 86–3859 (hereinafter *Brock I*), alleged that several of the local delegate elections were conducted in derogation of sections 401(a), (e), and (g) of the Labor–Management Reporting and Disclosure Act (hereinafter LMRDA), encoded at 29 U.S.C. sections 481(a), (e), and (g). The violations alleged by the Secretary occurred in Locals 119, 218, 514, 1049, and the Region 5 Retired Workers Advisory Council (hereinafter RWAC).[6] An amended complaint alleging the same violations was filed on September 18, 1986. As relief, the Secretary seeks an order voiding the June 4, 1986 election and ordering the rerunning of the entire election for the Region 5 Regional Director. The Secretary asserts that such a rerunning should include both the local delegate elections and the regional director election.

Tucker also filed a protest with the UAW regarding his termination from his staff position. This protest was originally voiced in a letter to Owen Bieber dated May 27, 1986. No response to the letter was received by Tucker prior to the election. After the election, Tucker submitted a second letter, dated June 18, 1986, also appealing his termination. When the UAW did not make a final decision on this matter within 90 days of the June letter, Tucker filed a complaint on September 19, 1986 with the Secretary of Labor. Following an investigation, the Secretary filed suit in this Court.

This lawsuit, Civil Action No. 86–4827 (hereinafter *Brock II*), is the second in the present series. It was filed by the Secretary on November 18, 1986, and alleges that Tucker was terminated in retaliation for seeking union office. The complaint also alleges that the 90 day rule, on the basis of which Tucker was fired, is in direct contravention of section 401(e) of Title IV of the LMRDA and the Secretary's interpretive regulations. Again, the relief sought is the rerunning of the entire election. Tucker's motion to intervene in this action was unopposed; it was granted on February 18, 1987.

Tucker also filed a complaint under Article 32, section 15 of the UAW Constitution regarding alleged violations of the UAW Ethical Practices Codes. Among other allegations, Tucker contended that union resources were improperly used to support Ken Worley's candidacy and that threats and intimidation were used to promote Worley's campaign. This protest, dated July 1, 1986, was submitted in letter form to the UAW Public Review Board (hereinafter PRB) in care of Owen Bieber. The Tucker complaint was remanded to the IEB by the PRB on August 28, 1986. Following the remand, Tucker filed a third complaint with the Secretary of Labor. This complaint was filed on October 2, 1986, three calendar months from the date of Tucker's UAW protest. On the chance that the three month period in LMRDA section 402(a) was commenced on the date of the remand rather than the date of his initial protest, Tucker filed the same complaint with the Secretary on December 1, 1986.

Another letter protest dated June 27, 1986 regarding the same violations was

---

5. The credentials committee presented its findings in a statement made to the convention delegates. The statement outlines the allegations made both in writing and orally by Jerry Tucker and describes the actions taken by the committee. Among other items, the statement explicitly indicates that Tucker was provided an opportunity to amplify the charges made in his letter to Owen Bieber.

6. Although the Secretary's answers to the UAW's interrogatories indicated that violations were also found in Local 2175, allegations regarding that local are not included in the complaint. This was ostensibly due to the existence of issues of material fact regarding the violations in Local 2175.

sent to the IEB via Owen Bieber by Claude E. Thornton. Mr. Thornton has been a member in good standing of UAW Local 93 at all times relevant to this action. The Thornton protest was submitted to the IEB after Local 93 adopted a resolution approving submission of the protest. When the IEB did not act on this protest within three months of its submission, Thornton filed a complaint with the Secretary of Labor. This complaint was made via a letter dated October 9, 1986, and also was refiled with the Secretary on December 1, 1986.

Following investigation of the Tucker and Thornton complaints, the Secretary filed the third lawsuit in this series, Civil Action No. 86–5007 (hereinafter *Brock III*). *Brock III* was filed on December 1, 1986. In the complaint, the Secretary alleges that certain campaign practices engaged in by Ken Worley violated the provisions of section 401(g) of the LMRDA. Specifically, it is alleged that Worley utilized union funds to mount his campaign, including supplying the jackets with "Ken Worley, Director" stamped on them and sending a campaign letter on union stationery which was typed on a union typewriter. The Secretary again seeks relief in the form of a rerun election.

Finally, Jerry Tucker has filed a private cause of action with this Court. This lawsuit, Civil Action No. 86–4164 (hereinafter *Tucker v. Bieber*), alleges that Tucker's termination from his staff position violated Title I of the LMRDA, the UAW Constitution and Ethical Practices Codes, and his right as a union employee to be terminated only for certain specified reasons after approval by the IEB. Tucker alleges that his termination constitutes breach of contract, breach of contract of employment, and tortious interference with a contractual relationship. Tucker also alleges Michigan causes of action for wrongful discharge and international infliction of emotional harm. For relief, Tucker seeks an injunction restoring him to his staff position as Assistant Director of Region 5 and damages in the amount of Thirty Thousand Dollars, plus Six Thousand Dollars for each month after this complaint for loss of earnings and benefits. Absent injunctive relief, Tucker claims that irreparable harm will result. Tucker also seeks punitive damages in the amount of One Hundred Thousand Dollars against defendant Owen Bieber, as well as costs.

Jerry Tucker was allowed to intervene in *Brock I* on December 22, 1986; in *Brock II* on February 19, 1987; and in *Brock III* on March 10, 1987. The four cases were consolidated on March 27, 1987 pursuant to this Court's order. Tucker subsequently filed a motion to sever *Tucker v. Bieber* from the three cases brought by the Secretary of Labor. A letter was filed indicating that the Secretary had no objections to the severance. However, the UAW has filed a motion in opposition to severance.

## I. SUMMARY JUDGMENT

A total of ten motions for summary judgment or partial summary judgment have been filed in the instant case. In *Brock I*, the UAW and the Secretary have each filed motions for partial summary judgment. In *Brock II*, summary judgment motions have been filed by the Secretary, the UAW, and Jerry Tucker. Partial summary judgment motions have been filed by the Secretary, the UAW, and Tucker in *Brock III*. Finally, In *Tucker v. Bieber*, Tucker has filed a motion for partial summary judgment, while the UAW has filed a cross-motion for summary judgment. Proper responses have been filed to each motion.

The standards which must be used in deciding these motions are clear. Pursuant to Fed.R.Civ.P. 56(c), summary judgment may be granted when there is no genuine issue of material fact. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Sons, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). Additionally, under Fed.R.Civ.P. 56(e), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). The movant in a motion for summary judgment has the initial responsibility of informing the Court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(e). There is no express or

implied requirement that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the nonmovant cannot establish an essential element of his claim and summary judgment is appropriate, the movant is entitled to the entry of summary judgment as a matter of law. *Id.* Finally, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). These standards shall be applied in deciding the present motions.

## II. LMRDA

■ In general, courts are reluctant to authorize judicial interference in the internal affairs of unions. *Trail v. International Brotherhood of Teamsters*, 542 F.2d 961, 968 (6th Cir.1976); *Stelling v. International Brotherhood of Electrical Workers, Local 1547*, 587 F.2d 1379, 1387 (9th Cir.1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979). However, the LMRDA provides exceptions to this "hands off" policy. Where a violation of the LMRDA has occurred, the courts must interfere in the union's affairs. This interference is to be undertaken with due deference to the remedies available within the union. As stated in *Hodgson v. Local 6799, United Steelworkers (Local 6799)*, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971): "[T]he relevant legislative materials reveal[ ] a clear congressional concern for the need to remedy abuses in union elections without departing from the longstanding congressional policy against unnecessary governmental interference with internal union affairs." 403 U.S. at 338, 91 S.Ct. at 1845.

The instant cases involve alleged violations of the LMRDA, as noted earlier. In *Brock I, Brock II*, and *Brock III*, it is contended that the UAW's actions violated Title IV of the LMRDA, while in *Tucker v. Bieber*, Jerry Tucker asserts that Title I of the LMRDA was violated. Title I, setting forth the Bill of Rights of members of labor organizations, is encoded at 29 U.S.C. sections 411–15, corresponding to LMRDA sections 101–05. Title IV, LMRDA sections 401–03, governs union elections, and is encoded at 29 U.S.C. sections 481–83. In accordance with the powers granted it under the LMRDA, the Secretary of Labor has adopted interpretive regulations of Title IV. These regulations are promulgated at 29 C.F.R. sections 452.1–.138.

■ Title I provides certain rights to union members. Specifically, section 101 of the LMRDA provides:

No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. section 411(a)(5). The provisions of Title I are only enforceable via a private action by the union member whose Title I rights have been infringed. 29 U.S.C. section 412. That individual "may bring a civil action in a district court of the United States for such relief ... as may be appropriate." *Id.* Actions against a labor organization must be taken in the district court where the alleged violation occurred, or where the principal office of the labor organization is located. *Id.*

■ Title IV carefully prescribes the procedures which must be followed in union elections and in protests of union elections. LMRDA section 401 provides the procedures which unions must follow in running an election, while methods of enforcement of the LMRDA are set forth in section 402. If the alleged violations of Title IV have indeed occurred and if they "may have affected the outcome of an election." LMRDA section 402(c), the Court must institute the remedies set forth in the LMRDA. Additionally, Title IV is a post-election remedy which contains no requirement that internal union remedies be exhausted *before* an election. *Wirtz v. National Maritime Union*, 284 F.Supp. 47 (S.D.N.Y.), *aff'd*, 399 F.2d 544 (2d Cir.1968).

■ Title I and Title IV are often confused by LMRDA litigants. In response to

this confusion, courts have determined that the test of whether a case is properly brought under Title I or Title IV is whether issues relate to eligibility for office. If such eligibility is involved, the case is clearly a Title IV case. *Denov v. Chicago Federation of Musicians Local 10–208*, 703 F.2d 1034 (7th Cir.1983).

Having presented this basic introduction to the LMRDA, the Court shall now discuss the applicability of its provisions to the cases at hand. As stated at hearing, the Court shall issue a separate opinion in *Tucker v. Bieber* allowing for the submission of additional materials, if any, by the parties within thirty days of the date of this opinion. Since Title I claims are at issue only in *Tucker v. Bieber*, the Court shall reserve its discussion of Title I until the issuance of its opinion in *Tucker v. Bieber*. In light of this *de facto* severance of *Tucker v. Bieber*, the motion to sever that case shall be denied as moot. However, the Title IV claims involved in the three *Brock* cases shall be thoroughly analyzed below.

A. Title IV: Exhaustion of Remedies

 Under Title IV, the complaining member must exhaust his union remedies as a prerequisite to the Secretary bringing suit against the union in the district court. *Brock v. International Union of Operating Engineers, Local 369* (*Local 369*), 790 F.2d 508, 509 (6th Cir.1986); *Hodgson v. District 6, United Mine Workers* (*District 6*), 474 F.2d 940 (6th Cir.1973). As 29 U.S.C. section 482(a), LMRDA section 402(a), provides:

A member of a labor organization—
(1) who has exhausted the remedies available under the constitution and by-laws of such organization and of any parent body, or
(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,
may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 [LMRDA section 401] of this title (including violation of the constitution and bylaws of the labor organization

pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

Further, LMRDA section 402(b) provides in pertinent part that:

The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe.

29 U.S.C. section 482(b). Hence, the Secretary cannot take action against a union until an aggrieved union member who has exhausted union remedies files a complaint with the Secretary. *Local 369, supra.* Thus, the first issue the Court must consider is whether union remedies were indeed exhausted in the three *Brock* cases.

 There are two distinct aspects to exhaustion. The first is procedural, addressing whether the union member complained through the proper union channels. Determining whether the procedural element of exhaustion has been fulfilled is merely a matter of reviewing the union requirements. The second aspect addresses scope, that is, whether the protest filed with the union by the union member was adequate to inform the union of the supposed LMRDA defects in an election. *Local 369, supra* at 509–10; *District 6, supra* at 944–46; *Local 6799, supra* 403 U.S. at 340–41, 91 S.Ct. at 1846. In determining whether the scope requirement has been

met, the protests filed by members with their unions are to be construed liberally. As stated by the Supreme Court in *Local 6799*,

> We are not unmindful that union members may use broad or imprecise language in framing their internal protests and that members will often lack the necessary information to be aware of the existence or scope of many election violations. Union democracy is far too important to permit these deficiencies to foreclose relief from election violations; and in determining whether the exhaustion requirement of [LMRDA] section 402(a) has been satisfied, courts should impose a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question.

403 U.S. at 340–41, 91 S.Ct. at 1846. However, the Supreme Court added a warning for the union member as well: "[W]hen a union member is aware of the facts supporting an alleged election violation, the member must, in some fashion, indicate to his union his dissatisfaction with those facts if he is to meet the exhaustion requirement." *Id.* Thus, the union member must raise any facts or issues relating to election violations of which he is aware during his protest to the union. Failure to raise such issues will result in a finding that union remedies were not exhausted. *Hodgson v. Local 1299, United Steelworkers (Local 1299)*, 453 F.2d 565 (6th Cir. 1971).

 In *Brock I*, the procedural component of exhaustion was clearly fulfilled. Although the UAW contends that Tucker's union delegate protest was untimely since

it was made on June 5, 1986, the day after the election, it is clear that any such objections were waived when the convention delegates voted to reconvene the credentials committee on June 6, 1986.[7] Additionally, the UAW raised no issues regarding other procedural improprieties in Tucker's protest at the time it was made.[8] Finally, since no further appeal of delegate protests is allowed once the general delegate body has acted on a protest, UAW Constitution, Article 33, section 2(b), Tucker exhausted the appeals which were available to him within the union. On the basis of these factors, the Court concludes that Tucker clearly fulfilled the procedural component of exhaustion.

 The scope component of exhaustion was also fulfilled. Tucker's written delegate protest alleged that delegates from Locals 1482, 2175, and 967 had improperly voted. In a supplemental oral protest presented to the reconvened credentials committee, Tucker also questioned the validity of the elections in Locals 286 and 514. The Secretary ultimately filed suit on the charges alleged in Tucker's protest, alleging violations in Locals 119, 218, 514, 1049, and RWAC. Viewed objectively, Tucker's protests were sufficient to inform the UAW that there were possible LMRDA violations in the election. Among other items, the protests clearly alleged improprieties in local delegate elections. Additionally, when acting on the protest, the credentials committee specifically considered the propriety of the local delegate elections and nominations. In light of these facts which are not disputed by the UAW, it has not met its "heavy burden ...

---

7. The UAW argues that Tucker's protest was untimely since it was not made before the election. The UAW apparently relies on Article 8, section 15 of its constitution. That section states that protests of local delegate elections must be received by the credentials committee by the earlier of seven days after the local delegate election or ten days prior to the convention. Notably, section 15 specifically provides that the time limitation on protests may be waived "where the interests of justice would require."

8. An examination of the facts surrounding Tucker's protest suggests that there were no

improprieties. Decisions of the credentials committee may be appealed pursuant to Article 33, section 2(b) of the UAW Constitution. Under that section, an appeal must be first made to the credentials committee and then to the general delegate body. When there is no credentials committee, all appeals must be taken directly to the director of the national department or region responsible for the convention. Since the convention involved was an international UAW convention and the credentials committee was already disbanded, Tucker's appeal to UAW President Bieber was apparently proper.

to show that it could not in any way discern that a member was complaining of the violation in question." *Local 6799, supra; Donovan v. Local 120, Laborers' International Union*, 683 F.2d 1095 (7th Cir.1982). Rather, the facts demonstrate that the nature of Tucker's protests was well understood by the UAW.

The UAW argues that it could not discern that Tucker's protest regarding Locals 1482, 2175, 967, 286, and 514 would lead to the Secretary's complaint about Locals 1049, 119, 218, and RWAC. In support of its argument, the UAW cites *Local 369, supra*. However, the UAW conveniently ignores one fact: the Secretary's complaint also alleged election violations in Local 514. Jerry Tucker protested this local to the credentials committee, as is reflected by the committee's report to the delegates. Thus, even under the UAW's narrow construction of *Local 369*, it had a fair opportunity to consider Tucker's initial protest as to Local 514, and Tucker clearly exhausted his remedies as to that local. The Court offers no opinion as to whether Tucker sufficiently exhausted his remedies as to Locals 1049, 119, 218, and RWAC. Although the UAW asks this Court to go one step beyond the Sixth Circuit's decision in *Local 369*, and to declare that Tucker did not exhaust his remedies as to Locals 1049, 119, 218, and RWAC, the Court declines to so rule. The exhaustion of remedies as to Local 514 was sufficient to allow the Secretary to file his complaint; the Court need not reach the question of exhaustion as to the other locals.

The complaint in *Brock I* was filed by the Secretary on September 12, 1986, more than 60 days after the date when Tucker filed his complaint with the Secretary. However, as letters exchanged between the parties make clear, the UAW voluntarily waived the 60–day time period prescribed in LMRDA section 402(b). Pursuant to the UAW's agreement with the Secretary, the Secretary had until September 12, 1986 to file *Brock I*. Since the UAW waived the 60–day time limitation, the Secretary's lawsuit shall be considered as timely filed. *See Hodgson v. International Printing Pressmen*, 440 F.2d 1113 (6th Cir.1971) (congressional intent and purpose in enacting Title IV best served by allowing unions to waive 60–day time limit). *Accord, Hodgson v. Lodge 851, International Association of Machinists*, 454 F.2d 545 (7th Cir. 1971). Accordingly, the complaint in *Brock I* was in all aspects properly filed by the Secretary.

*Brock II* involves more complicated questions of exhaustion of remedies. In *Brock II*, Tucker originally filed an appeal of his termination as Assistant Director of Region 5 on May 27, 1986. Since Tucker was fired by UAW President Owen Bieber, he took his appeal to the IEB pursuant to Article 33, sections 1(a) and 2(a) of the UAW Constitution. In section 4(c) of Article 33, the time limit for appeals to the IEB is set at 30 days. Hence, Tucker's appeal to the IEB had to be instituted within 30 days of his termination. Since Tucker was fired on May 12, 1986, his May 27, 1986 appeal was apparently timely. A second appeal of the termination was submitted by Tucker on June 18, 1986. This appeal was seemingly meant to supplement the first appeal, having assertedly been submitted in response to a request by Gary Bryner of the UAW. When the IEB did not reach a final decision on Tucker's appeal within three calendar months of the May 27, 1986 appeal, he filed a complaint with the Secretary of Labor. This complaint, dated September 19, 1986 appears to meet the time requirements of LMRDA section 402(a)(2).

The parties do not dispute the facts underlying *Brock II*, but, rather, differ as to the legal conclusions which should be drawn from those facts. Although the steps taken by Tucker appear to fulfill the procedural aspect of exhaustion, the UAW argues that Tucker followed improper procedure. The UAW contends that Tucker should have raised his termination protest to the convention credentials committee or the general delegate body. Additionally, the UAW contends that the Secretary should have amended *Brock I* to encompass the claims eventually raised in *Brock II*. It is argued that, because the Secretary failed to amend *Brock I*, *Brock II* should be dismissed since it was not filed within 60 days of June 13, 1986, the date of Tucker's delegate complaint to the Secretary. The UAW asserts that the Secretary

should not be allowed to "piecemeal" his cause of action by filing several complaints regarding supposedly different issues instead of one complaint.

 The Court is not persuaded by the UAW's argument. As the language of section 402(a) demonstrates, Tucker had to exhaust the remedies which were available to him under the UAW Constitution and bylaws before he could file a complaint with the Secretary. The Court's review of the UAW Constitution reveals no provision allowing protests regarding termination to be raised with the convention credentials committee or the convention's general delegate body. Rather, the procedure for termination protests appears to be that which Tucker followed. The Court notes that, had Tucker not followed that procedure, the UAW could properly assert that Tucker had not exhausted his union remedies. Thus, the Court finds that Tucker could appropriately file more than one complaint with the Secretary as long as those complaints were based on properly invoked union remedies. Although this may result in "piecemealing" of a sort, it also allows the UAW a full opportunity to correct any improprieties which occur in an election. Thus, allowing Tucker's separate complaints to stand is in full accordance with the legislative intent of section 402(a). *See Local 6799,* 403 U.S. at 338–39, 91 S.Ct. at 1845 (discussing congressional intent in enacting Title IV). Union self-government is preserved while, at the same time, union members are not penalized by being barred from raising election complaints when they have diligently pursued their union remedies.[9] As indicated by these factors, *Brock I* and *Brock II* were properly brought as separate lawsuits. The Court finds that the procedural aspect of exhaustion was properly fulfilled in *Brock II.*

 The scope component also appears to have been fulfilled. Although Tucker's initial protest to the IEB did not specifically refer to his termination being based on an unreasonable candidacy requirement, the June 18, 1986 supplemental appeal did. As this supplement was submitted to the IEB at its own request, it is apparent that the UAW was adequately informed of the alleged section 401(e) defect in the election. Thus, Tucker's protest met the scope requirement of exhaustion.

However, even though Tucker has properly exhausted his union remedies, it is not clear that there is a cause of action under the LMRDA for his termination. The Secretary alleges that the 90–day rule, on the basis of which Tucker was fired from his position as an International Representative, constitutes an unreasonable candidacy qualification. The essence of the Secretary's argument is that it is unreasonable to make a staff member who chooses to run against his regional director for union office declare his candidacy 90 days before an election and take an unpaid leave of absence from his staff position.

 Pursuant to LMRDA section 401(e),

> [E]very member in good standing shall be eligible to be a candidate and to hold office (subject to ... reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof.

29 U.S.C. section 481(e). As this statute specifies, unions are not powerless to restrict candidacies for elective office. However, the congressional authorization of "reasonable qualifications" is not to be given broad reach. *Wirtz v. Hotel Employees Union, Local 6 (Hotel Employees),* 391

---

9. The date when a complaint could first be filed with the Secretary varied greatly in *Brock I* and *Brock II.* In *Brock I,* the date was June 6, 1986, the day that Tucker's union remedies were exhausted, while in *Brock II,* the date was August 27, 1986, when three months had passed without a final decision after Tucker's invocation of union remedies. Pursuant to section 402(a), Tucker had one month from these dates to file a complaint with the Secretary. Failure to so file a complaint results in the Secretary being unable to act on the complaint. *Molina v. Union de Trabajadores, Local 1740,* 762 F.2d 166 (1st Cir.1985). It is apparent that, had Tucker waited until three months after his union remedies in *Brock II* were invoked to file his first complaint, the Secretary would have been unable to act on the allegations involved in *Brock I.*

U.S. 492, 499, 88 S.Ct. 1743, 1748, 20 L.Ed. 2d 763 (1968); *Doyle v. Brock,* 632 F.Supp. 256 (D.D.C.1986). Rather, "[t]he basic objective of Title IV of the LMRDA is to guarantee 'free and democratic' union elections modeled on 'political elections in this country' where 'the assumption is that voters will exercise common sense and judgment in casting their ballots.'" *Local 3489, United Steelworkers of America,* 429 U.S. 305, 309, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977), *citing Hotel Employees, supra.* Whether candidacy restrictions are reasonable under section 401(e) must be measured by whether they are consistent with this objective of Title IV. *Steelworkers,* 429 U.S. at 309, 97 S.Ct. at 614. Thus, candidacy requirements which substantially reduce the ranks of those who might serve as opposition candidates are contrary to Title IV. *Id.*

In reviewing the facts surrounding Tucker's discharge, it is apparent that he was not denied candidacy due to the discharge. The only direct effect on Tucker's candidacy due to the 90–day rule is that he could not access the convention floor in order to campaign for union office. However, because "Title IV is not designed merely to protect the right of a union member to run for a particular office in a particular election," *id.,* the Court shall consider whether the candidacy qualification involved in this case has a general effect on the running of democratic elections in the UAW.

The 90–day rule states:

A staff member who decides to run against an officer or regional director must make his intentions known and request a leave of absence at least ninety days prior to the convention. Such staff member will be given a leave of absence and be subject to reassignment in the event he is an unsuccessful candidate.

Pursuant to this rule, regional directors' staff members must take a 90 day leave of absence without pay if they choose to run

for UAW office against an incumbent director. The policy behind this rule is assertedly to prevent any potential conflict of interest between the incumbent and his staff.

The Secretary alleges that the 90–day rule has a chilling effect on International representatives declaring themselves candidates for union office. Specifically, it is asserted that the 90–day rule deprives International representatives who chose to run of their visibility three months prior to the election and that the requirement of foregoing 90 days of pay eliminates opposition to incumbents. Despite the Secretary's contentions, Richard Shoemaker's affidavit submitted in support of the UAW's motion for summary judgment demonstrates that the 90–day rule applies only to approximately 0.068% of the UAW's membership.[10] Thus, it appears that the rule does not unduly prevent UAW members from running against incumbent officers. Additionally, four staff members, including Tucker, chose to run against incumbents for office at the 1986 convention. Of these, one was elected to union office. Notably, of the four, only Tucker did not conform to the 90–day rule, and only Tucker was separated for union employment. Hence, the 90–day rule, which was evenly applied to all staff members, did not prevent staff members from opposing incumbents. It is also apparent that the 90–day rule is far more lenient than an outright prohibition on staff members running for union office. Such a prohibition is allowed under the Secretary's regulations. 29 C.F.R. section 452.48. On the basis of the above factors, the Court concludes that the 90–day rule is a reasonable restriction on candidacy if, as indicated in 29 C.F.R. section 452.48, the restriction is contained in the UAW's Constitution or bylaws.[11]

At the present time, there is a great deal of debate regarding whether the 90–day rule has been properly enacted by

10. The membership of the UAW at the time of the affidavit was 1,034,868. Of these members, only 700 were appointed UAW staff members.

11. 29 C.F.R. sec. 452.48 provides:
A labor organization may *in its constitution and by laws* prohibit members who are also

its full-time non-elective employees from being candidates for union office, because of the potential conflict of interest arising from the employment relationship which could be detrimental to the union as an institution (emphasis added).

the UAW. In fact, the PRB is currently considering this issue in a case before it.[12] The Court finds that the congressional intent behind Title IV is best served by letting the UAW via the PRB resolve union constitutional questions. If the Court were to step in to determine the validity of the 90–day rule, unnecessary judicial interference with internal union affairs would result. Thus, although the Secretary seeks a specific ruling as to the validity of the 90–day rule, the Court shall not make such a ruling. Further, should the Court grant the relief sought by the Secretary in *Brock I* or *Brock III*, *Brock II*, seeking the same relief, would become moot. Therefore, before ruling on *Brock II*, the Court shall give full consideration to *Brock I* and *Brock III*.

In the third Title IV case, *Brock III*, Tucker first filed an ethical practices protest with the PRB on July 1, 1986. This protest was in letter form, and was brought pursuant to Article 32, section 5(b) of the UAW Constitution. It was addressed to Owen Bieber and the PRB.[13] Pursuant to the UAW Constitution, Article 32, section 4, such a protest must be filed within sixty days of the time the member first becomes aware or reasonably should have become aware of the alleged violations. Additionally, the complaining member must either seek approval of the protest from his local union or set forth the reasons why such approval was not sought. UAW Constitution, Article 32, section 5(c).

■ On review of Tucker's protest, the Court finds that it was timely under the UAW Constitution. The earliest violation alleged by Tucker occurred "[s]hortly after [he] announced [his] candidacy" on May 8, 1986. Thus, Tucker's ethical practices protest was clearly within the sixty days provided in Article 32, section 4. Additionally, Tucker's protest supplied an adequate set of reasons why his local did not approve the protest. To restate those reasons, no meeting was held at his local in June 1986. Further, the July 1986 meeting was scheduled for a date which was after Tucker's time period would run. The UAW has raised no arguments as to the sufficiency of these reasons. When the UAW did not reach a decision on Tucker's protest within three calendar months after it was made, Tucker filed a complaint with the Secretary of Labor. This complaint was filed on October 2, 1986. Although the UAW asserts that the three month period only began to run when the case was remanded to the IEB from the PRB, no provision for such tolling is made in section 402(a).[14] Rather, the statute merely provides for a straight three month period. Accordingly, the Court finds that Jerry Tucker's ethical practices protest met the procedural requirements for exhaustion and that his complaint was properly filed with the Secretary.

Claude Thornton's ethical practices protest also fulfilled the procedural component of exhaustion. It was timely, having been submitted to Owen Bieber in a letter dated June 27, 1986. Further, it was submitted with the approval of Thornton's local. This protest went to the IEB which did not produce a final decision in the matter within three months of its filing. Subsequently, Thornton filed a complaint with the Secretary on October 9, 1986. Pursuant to LMRDA sec. 402(a), this complaint was properly filed with the Secretary.

**12.** In the case before the PRB, *In re Brandt*, the complainant was an International Representative who appealed a change in UAW assignments given him after he ran as a candidate in violation of the 90–day rule. Although the PRB at first ruled that the 90–day rule did not violate the UAW Constitution, it subsequently reconsidered its decision in light of evidence which potentially demonstrated that the 90–day rule had not been enacted by the IEB. As of the present, an opinion has not been rendered by the PRB in the *Brandt* case.

**13.** Although the UAW Constitution provides that the IEB has the initial responsibility for investi-

gating an ethical practices codes complaint, Article 32, sections 5(a) and (b), Tucker submitted his complaint to the PRB itself. After fully considering the question of whether it had jurisdiction under the circumstances of the case, the PRB remanded it to the IEB. The PRB held that the previous PRB cases cited by Tucker in support of his proposition that he should be allowed to bypass the IEB were not controlling.

**14.** Tucker's complaint was refiled with the Secretary on December 1, 1986 on the chance that the three month period was tolled. This refiling was unnecessary.

■ The scope requirement of exhaustion was also met in *Brock III*. Tucker's ethical practices protest alleged that union resources were used to promote Worley, citing the convention jackets bearing Worley's name, Worley's campaign letter, and the presence of International representatives at Local 1999, among other contentions. These issues are the same which were later raised in the complaint filed by the Secretary with this Court. As the UAW had the opportunity to address the charges made by Tucker, it is clear that exhaustion occurred. Of note, Jerry Tucker's protest to the PRB served as a supplemental statement of Claude Thornton's position; Thornton's protest, therefore, covered the allegations made in Tucker's letter to the PRB. Hence, exhaustion also occurred as to Thornton's protest.

The major argument which the UAW raises in *Brock III* is that this cause of action should have been brought with *Brock I*. Although the Court has rejected this argument in its discussion of *Brock II*, it is of even less merit in *Brock III*. As stated above, *Brock III* involves the filing of two complaints with the Secretary. One was filed by Claude Thornton who was not a complainant in the previous two *Brock* suits. Thus, even were the Court to hold that Jerry Tucker's complaint was barred due to his failure to bring it with one of his earlier complaints, Thornton's complaint would not be barred. As set forth above, Thornton's complaint to the Secretary properly exhausted his union remedies. Accordingly, the Court finds that *Brock III* is in all respects properly before it.

B. Title IV: Effect on Election

Since the Court has concluded that union remedies were properly exhausted in *Brock I* and *Brock III*, the next issue to be resolved is whether the alleged violations "may have affected the outcome of an election." As 29 U.S.C. section 482(c) states:

If, upon a preponderance of the evidence after a trial upon the merits, the court finds—

\* \* \* \* \* \* \*

(2) that the violation of section 481 of the title [LMRDA section 401] may have affected the outcome of an election,

the court shall declare the election, if any, to be void and direct the conduct of a new election under the supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. The Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization.

LMRDA section 402(c). Although this section speaks in terms of "a trial on the merits," it has been established that summary judgment may be granted in a proper case. *Donovan v. United Counties Carpenters District Council, United Brotherhood of Carpenters*, 561 F.Supp. 791 (N.D. Ohio), *aff'd*, 735 F.2d 1363 (6th Cir.1984); *Usery v. International Organization of Masters, International Maritime Division*, 538 F.2d 946 (2d Cir.1976). As stated earlier, the entry of summary judgment for the moving party is mandated when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In the present case, there are no genuine issues of material fact. Rather, the parties merely disagree as to the legal significance of those facts. Accordingly, the issue to be resolved in the context of the present summary judgment motions is whether the alleged violations of LMRDA section 401 may have affected the outcome of an election. If the violations may have affected the outcome of an election, summary judgment may be granted for the Secretary and Tucker.

■ At hearing, counsel for the UAW admitted that the violations complained of in *Brock III* had occurred. That is, the jackets which had "Ken Worley, Director" printed on them were purchased with union funds and union stationery was used by Worley to send out his campaign letter.[15]

---

15. As is stressed by the UAW, Worley did repay the union funds which were used. However, reimbursement of such funds does not correct a

It was also admitted that a union typewriter and union facilities were used to produce the campaign letter which Worley sent to the local delegates. Finally, the UAW admitted that two international representatives did address the Local 1999 delegates at the local's facilities in Oklahoma City.

 There is little doubt that the use of the union stationery, typewriter, and facilities are in plain violation of LMRDA section 401(g). *See Local 369*, 790 F.2d at 513 (union president's use of a union copying machine for personal electioneering purposes found to be a plain violation of section 401(g)). It is more difficult to assess whether the convention jackets are in violation of section 401(g). The parties strenuously dispute the effect of the jackets. The Secretary and Tucker allege that the jackets were "walking billboards" for Worley, while the UAW contends the jackets are merely a matter of union tradition with little campaign significance. Although the Court is unable to conceive of any reason why the name of a candidate for union office should appear on convention jackets other than for electioneering purposes,[16] the Court need not reach the issue of whether those jackets were in violation of section 401(g). Nor must the Court decide whether the presence of the International representatives at Local 1999's delegate meeting is in violation of section 401(g). Although the effect of the "Worley" jackets and the International representatives is debated, the other violations of section 401(g) are sufficient to establish a prima facie case that the violations "may have affected" the outcome of the election. *Hotel Employees*, 391 U.S. at 506–07, 88 S.Ct. at 1751–52. Such a prima facie showing may be countered by evidence supporting a finding that the violation did not affect the election result. *Hotel Employees*, 391 U.S. at 507, 88 S.Ct. at 1752; *Marshall v. Local 1010, United Steelworkers*, 498 F.Supp. 368, 376 (N.D.Ind.1980). The UAW has a substantial burden of showing that the violations did not affect the outcome of the election. *Local 369, supra*.

 In the present case, the UAW has not met its burden. The arguments the UAW makes simply do not offset the section 401(g) violations. "Findings of harmlessness [in union election cases] have generally been confined to situations in which the particular violation can clearly be shown to have been isolated in its effect." *Id.* at 513. The UAW has not clearly shown that the Worley campaign letters were isolated in their effect. Rather, the UAW has suggested that Worley's reimbursement of union funds was sufficient to eliminate any effect on the election. Since the Court has previously indicated that the UAW's argument is contrary to law, the UAW's argument does not meet its substantial burden. Therefore, the Court concludes that the section 401(g) violations alleged in *Brock III* may have affected the outcome of the regional director election. Summary judgment for the Secretary and Tucker is thus proper.

 In *Brock I*, the violation in Local 514 also may have affected the outcome of an election. A review of the alleged violation in Local 514 demonstrates that the nomination procedures set forth in LMRDA section 401(e) were not followed. Pursuant to section 401(e), reasonable opportunity must be given for the nomination of candidates. The Secretary's regulations establish that notice of nominations must be timely and reasonably calculated to inform all members of the positions to be filled in the election as well as the time, place, and form for submitting nominations. 29 C.F.R. section 452.56(a). These requirements were not met by Local 514's nomination meeting notice. Thus, the local delegate election was affected by the defects in the nomination procedure. Further, since Local 514 sent one delegate bearing two votes

---

section 401(g) violation. *See Schultz v. Local 6799, United Steelworkers*, 426 F.2d 969, 972–73 (9th Cir.1970), *aff'd*, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971) (even if de minimus amount of union funds used to support candidacy is reimbursed to the union, section 401(g) violation exists).

**16.** Of significance in this regard, Owen Bieber wore a "Worley" jacket on the convention podium while conducting UAW business. Bieber's donning of the jacket while conducting union business appears to be an instance of campaigning for Worley.

to the UAW convention, it is apparent that the outcome of the regional director election, decided by less than two tenths of one vote, may have been affected by the nomination violation. The UAW has offered no evidence to meet its burden of showing that the violation in Local 514 did not affect the outcome of either election. Therefore, the Court concludes that the Secretary has shown that the violation may have affected the outcome of both elections and that summary judgment for the Secretary and Tucker is proper in *Brock I.*

C. Title IV: Scope of New Election

Since violations of LMRDA sections 401(e) and (g) may have affected the election of Regional Director in Region 5, the Court must declare that election void and direct a new election under the Secretary's supervision. The scope of the new election is debated by the parties. While the Secretary and Tucker contend that the new elections should encompass both local delegate elections and the election for Region 5 Regional Director, the UAW contends that only the Regional Director election should be rerun. In support of its contention that local delegate election should not be rerun, the UAW asserts that the local delegates are officials of the locals. The UAW contends that, since the delegates are officials of the locals, the locals must be sued by the Secretary in order for the delegates to be removed. As an alternate argument, the UAW avers that the locals are necessary parties under Fed.R.Civ.P. 19. Pursuant to this argument, the UAW contends that the Secretary's prayer for removal of the local delegates must be dismissed. Finally, the UAW argues that the Secretary has only found evidence of LMRDA violations at 5 of the 68 locals which existed at the time of the 1986 election. Since no violations were found at the other locals, the UAW contends that under no circumstances should the delegate elections be rerun at the innocent locals. Thus, if the Court should determine that the Secretary properly sued only the international union and that there was an LMRDA violation which "may have affected the outcome of the election," the UAW seeks to have the rerun election lim-

ited to only those locals where violations were found.

In response, the Secretary contends that his actions were properly directed against the UAW alone, and that the locals need not be joined under Fed.R.Civ.P. 19. Nor, it is claimed, was suit against the locals necessary in order for the delegate elections and the regional director elections to be rerun. The Secretary claims that he is challenging an international officer election, of which the election of local delegates is but one stage. It is contended that, under the LMRDA, the local delegates are merely participants in the international elections with no other duties. Further, the Secretary asserts that the LMRDA only requires the joinder of the locals when an election of officers in the local is challenged. Delegates, it is claimed, are not officers of the locals. Additionally, the Secretary argues that any decree that binds the UAW will also bind the locals due to the UAW Constitution. Intervenor Jerry Tucker has submitted a brief which reiterates the Secretary's arguments.

█ The Secretary's position is the more convincing. Under LMRDA sec. 401(a), "Every national or international labor organization ... shall elect its officers not less often than once every five years *either by secret ballot among the members in good standing or at a convention of delegates chosen secret ballot* (emphasis added)." 29 U.S.C. sec. 481(a). The LMRDA allows international unions to choose either option to elect their officers. Although the UAW would like the Court to hold that the local elections cannot be voided or rerun since the locals were not sued, the UAW has the convention option available to it pursuant to sec. 401(a) and not merely of its own accord. Even though the local delegate elections and the regional director election are considered separate elections for exhaustion purposes, *Brock v. Ohio State Council of Carpenters,* slip op. (6th Cir. May 5, 1987) [817 F.2d 104 (table)], they are still two stages of the same election process. As such, the UAW is responsible for the locals' conduct of del-

egate elections. *See Marshall v. Metal Polishers,* Civil Action No. C–1–77–606, slip op. (N.D. Ohio October 5, 1978) (international union responsible to insure compliance by locals in local delegate elections with the LMRDA where international union has chosen election of international officers by delegates).[17]

■ The UAW also argues that the locals must be sued if the Secretary wishes a rerun of a local delegate election "since the delegates are officials of the locals." This argument is misleading at best. Local unions need only be sued by the Secretary when an election of *officers* in the local is challenged. LMRDA sec. 402(b). Under the LMRDA, an "officer" is defined to be "any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions ... and any member of its executive board...." 29 U.S.C. sec. 402(n). This definition does not include local delegates. *See* 29 C.F.R. section 452.22.[18] While it could be true that delegates are "officials" of a local in some sense, they are not officers under the LMRDA. *See Donovan v. District Council 35, International Brotherhood of Painters* (*District Council 35*), 702 F.2d 25 (1st Cir.1983) (delegates to district council not officers of local and do not represent local when voting for district council officers). Accordingly, suit against the locals is not required in order for a rerun of the local delegate elections to occur.

The UAW's arguments regarding joinder of the locals under Fed.R.Civ.P. 19 also are meritless. Joinder under Rule 19 is only required when the person sought to be joined "claims an interest relating to the subject of the action and is so situated that the disposition of the action may ... as a practical matter impair or impede the person's ability to protect that interest...." Fed.R.Civ.P. 19. The UAW argues that

the locals have an interest in their delegates and so must be joined. However, an analysis of Fed.R.Civ.P. 19 demonstrates that the locals need not be joined. Pursuant to Fed.R.Civ.P. 19(a),

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

If a party does not fall within one of these provisions, joinder is not necessary. *Local 670 v. United Rubber Workers,* 822 F.2d 613, 618 (6th Cir.1987).

■ After careful examination of the facts in this case, it is apparent that the complete relief sought by the Secretary and Tucker can be afforded even though the locals have not been made parties to this suit. The UAW Constitution explicitly provides that the convention credentials committee may order local delegate elections to be rerun. UAW Constitution, Article 8, section 17(b). Additionally, the locals must comply with the laws of the international union or risk losing their charter. Article 36, section 4. Thus, it is apparent that the UAW has the power to order new delegate elections to take place in the locals even without those locals being joined. Accordingly, the criteria of Fed.R.Civ.P. 19(a)(1) are not met in this case.

**17.** The Sixth Circuit specifically left the issue of whether the Council was responsible for the locals' conduct of delegate elections undecided in *Ohio State Council of Carpenters.* Slip op. at 5 [817 F.2d 104 (table)].

**18.** 29 C.F.R. sec. 452.22 provides in pertinent part:

> Under certain circumstances, delegates to a convention of a national or international organization, or to an intermediate body, must be elected by secret ballot among the members in good standing of the labor organization they represent *even though such delegates are not "officers" of the organization* (emphasis added).

Additionally, it is questionable at best that the locals meet the requirements of Fed.R.Civ.P. 19(a)(2). In order for the locals to be joined under Rule 19(a)(2), it must be demonstrated that the locals have an interest relating to the present lawsuits and that disposition of this action in the absence of the locals will impede the locals' ability to protest that interest or expose the current parties to multiple liability. Such a showing has not been made. Although this Court's decision may have an adverse effect on the locals, that effect is insufficient to mandate that the locals be joined as parties. Rather, a party need only be joined under Rule 19 when "his absence prevents complete relief to existing parties or impairs his ability to protect a claimed interest in the action." *Marshall v. Local 20, International Brotherhood of Teamsters,* 611 F.2d 645 (6th Cir.1979). As set forth above, complete relief may be obtained without joinder of the locals. Additionally, the local delegate elections are but one stage in a two stage international officer election process. Had the UAW chosen direct elections, no local delegates would exist. As *District Council 35* states:

> The local unions act only as agents of the district council when they conduct elections for delegates to it and perform purely a ministerial function. An election of new delegates would affect the local to the extent of the cost of typing and mailing notices and nothing more ... In our view, there is no undue interference in the affairs of the locals which poses either a fourteenth amendment problem or a joinder problem.

702 F.2d at 28. Although *District Council 35* addresses an intermediate council election rather than an international officer election, the principles in that case are equally applicable to the election of international officers. The same two-stage election process exists in both types of elections, and it is unseemly that they should be treated differently. Thus, as in *District Council 35,* joinder of the locals is unnecessary in the instant case, and the full relief sought by the Secretary may be granted without joining the locals.

Notably, the UAW's reply brief argues that the delegates are not purely ministe-

rial in function in the UAW. Therefore, the UAW suggests that the holding in *District Council 35* should not be applied to the UAW local delegates. However, the functions of the delegates described by the UAW demonstrate that the delegates perform ministerial functions at the convention with few other functions. Further, the Secretary has stated that local delegates elected to vote in the rerun election would have the sole purpose of electing the Region 5 Regional Director. The Court finds that this limitation is sufficient to address the UAW's concerns.

The final issue raised by the UAW is whether a new election ordered by the Court should extend to the "innocent" locals. The UAW contends that only the delegate elections in locals where improprieties were found by the Secretary should be rerun. However, the Secretary claims that the term "new election" in LMRDA sec. 402(c) refers to an entirely new election and includes all new delegate elections. Notably, the case law does not indicate which construction should be given to "new election." Where an election process is two-stage by the union's choice, it appears that both stages must be rerun. That is, both the local delegate elections and the election for regional director must be rerun. In the present cases, there is further reason to insist on new elections in all the locals. The campaign letter sent by Ken Worley went to all local delegates and, due to its effect on those delegates, may have affected the outcome of the regional director election. This "taint" on the election cannot be dispelled by having rerun elections in only those locals where there were LMRDA violations in the delegate elections. Rather, the taint extended to all the delegates, as they all were recipients of the campaign letter. In light of the two-stage nature of the Region 5 Regional Director election and the taint placed on all local delegates due to Worley's campaign tactics, the Court determines that rerunning the local delegate elections in all locals is proper.

## III. CONCLUSION

As the Court's analysis indicates that the Secretary and Tucker are entitled to sum-

mary judgment in *Brock I* and *Brock III*, summary judgment shall be entered for the Secretary of Labor and Tucker. Additionally, since summary judgment for the Secretary and Tucker is proper in *Brocks I* and *III* and the Court shall grant the full relief sought by those parties, the Court need not reach the merits of *Brock II.* Since the relief sought in *Brock II* is that which the Court is granting in *Brocks I* and *III*, *Brock II* shall be dismissed as moot. Additionally, the motions filed in that case shall be denied as moot.

Finally, as a "book-keeping" matter, the Court shall grant Jerry Tucker's motion to strike the UAW's Rule 68 offer of judgment. This offer of judgment, although not accepted by the Secretary or Tucker, was filed with the Court on March 25, 1987. As the filing was in contravention of Fed. R.Civ.P. 68, the Court shall grant the motion to strike.

It appearing that summary judgment is appropriate and that the violations of the LMRDA may have affected the outcome of both stages of the Region 5 Regional Director election in 1986, the 1986 election of the Region 5 Regional Director shall be declared null and void, and the UAW shall be ordered to proceed with new elections forthwith under the supervision of the Secretary of Labor.

An appropriate order shall be entered.

### ORDER

In accordance with the Memorandum Opinion bearing this date,

IT IS HEREBY ORDERED that the June 4, 1986 election for Region 5 Regional Director is declared void and a new election is ordered under the supervision of the Secretary of Labor to be conducted as soon as reasonable and, so far as lawful and practicable, in conformity with the constitution and bylaws of the UAW. This two-stage election shall encompass both the local delegate elections and the election for regional director.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter in accordance with 29 U.S.C. sec. 482(c) until such time as the Secretary shall certify to the Court the name of the person elected as Region 5 Regional Director of the UAW, and the Court shall then enter a decree declaring such person to be the regional director of Region 5.

IT IS FURTHER ORDERED that *Brock II,* Civil Action No. 86–4827, is DISMISSED as moot.

IT IS FURTHER ORDERED that the Secretary and Jerry Tucker's motions for summary judgment are GRANTED in *Brock I,* Civil Action No. 86–3859, and *Brock III,* Civil Action No. 86–5007.

IT IS FURTHER ORDERED that the Secretary and Jerry Tucker's motions for summary judgment are DENIED as moot in *Brock II,* Civil Action No. 86–4827.

IT IS FURTHER ORDERED that the UAW's motions for summary judgment are DENIED in *Brock I,* Civil Action No. 86–3859, and *Brock III,* Civil Action No. 86–5007, and DENIED as moot in *Brock II,* Civil Action No. 86–4827.

IT IS FURTHER ORDERED that Jerry Tucker's motion to sever *Tucker v. Bieber* is DENIED as moot.

IT IS FURTHER ORDERED that Jerry Tucker's motion to sever *Tucker v. Bieber,* Civil Action No. 86–4164, is DENIED as moot.

IT IS FURTHER ORDERED that the UAW's Rule 68 offer of judgment is stricken from the record.

IT IS FURTHER ORDERED that all parties shall have 30 days from the date of this order to submit supplementary materials in *Tucker v. Bieber,* Civil Action No. 86–4164.